The judgment was unanimously <em>reversed.</em>

The reporter adds this note: "Though the whole court were for the reversal, yet a few of the members confined their opinion to the first point; (as to the finding of <em>no negligence</em> by the special verdict;) A great majority however concurred with the Chancellor generally, that the judgment ought to be reversed on both points."

VAN BOKKELIN <em>v.</em> INGERSÒLL, 5 Wend. 315.

In S. Ct. 7 Cow. 670.

<em>Shipping ; Freight ; Master and Owner ; Lien.</em>

THIS was an action of trover brought by the master of a ship engaged in foreign trade, against a party to whom he had delivered goods for safe-keeping, upon the freight for which he claimed a lien for the amount of advances and liabilities on account of the ship on the voyage then just terminated. The bailee without the master's permission, delivered the goods by direction of the owner to the consignee, on his paying the freight to <em>the owner.</em> The relation between the owner and master of a ship as to the liabilities of each on account of supplies and advances on her account, and the lien of the master for his freight were considered by the Supreme Court, and it will be seen that their decision was held correct by the Court of Errors as to the following points decided by them.

1. That a master of a vessel may collect the freight; but this is a right not for his own benefit, but as agent of the owner. The master has therefore no lien on the cargo, as against the owner, by which to secure an exclusive or gene-

ral right to receive the freight as master; but a payment of freight to the owner will discharge the goods, and is a complete defence against the master in an action for freight against the *consignee*.

2. That both owner and master are liable for all supplies and advances made for the use of the vessel on the contract of the master, unless credit is given to either exclusively, and that this extends as well to supplies furnished by a consignee of the vessel as to others.

3. That the master has a lien on the cargo and freight, co-extensive with his advances or liabilities for the use of the ship, and actual advances are not necessary to create the lien. Mere liability without payment is sufficient.

4. That the ship having earned freight on a voyage directed by a pretended owner, but who in fact had no title to her, and was a *tort feasor*, in getting possession of her, and from whom she was taken, and the possession restored to the true owner, by the decree of a court of admiralty; yet the true owner, especially if he receive the freight, is bound to indemnify the master against the liability incurred by him on account of the vessel; and the master has a lien on the cargo and freight, which he may retain or control to coerce the payment to him of the amount of his advances, liabilities, and primage. That the bailee of a part of the cargo subject to such lien, which was placed in store with him by the master to keep for *him*, having delivered it to the consignee on his paying the freight to the owner, was liable to the master in trover for the amount of his lien; and such a delivery of goods by a bailee for safe keeping, does not destroy the lien of the bailor; and that the right of lien in goods, is such a special property in them, as will support an action of trover, although the act of delivery or conversion is done under the authority of the general owner.

5. The Supreme Court also held that a person to whom the master was liable for advances on account of the ship, was a competent witness for the master in a suit to enforce his lien. The objection goes only to his credibility.

These conclusions of the Supreme Court, (see 7 Cow. 670. *et seq.*,) were not disturbed by the Court of Errors, but expressly affirmed. The reversal was on a point to which

apparently the attention of the Supreme Court was not particularly called. The jury had found a special verdict in the case, and among the items which they allowed the master in the amount of his lien, if the court should find him entitled, on the facts presented by, to a recovery, was an item for $140 wages due the master. The judgment rendered in the Supreme Court, included this item, and this was the only ground on which

The Court of Errors reversed the judgment. On the question being put, it appeared that the members of the court were unanimously of opinion that the judgment of the Supreme Court was erroneous, in allowing the master to recover for his *wages*, but that for the *residue* the judgment was right.

Whereupon a question arose whether the judgment of the Supreme Court could be *affirmed* in part, and *reversed* in part, and at a subsequent day,

The Chancellor stated the rule to be that when *distinct* judgments are given by the court below, as for instance a *judgment for damages*, and a judgment for costs; one may be reversed and the other affirmed; but when the judgment is *entire*, there must be a total affirmance or reversal. 8 J. R. 111, 558; 12 id. 340, 434; 13 id. 460; 14 id. 417. In the special verdict in this case, the jury have stated the several amounts of the several items, but yet if the Supreme Court should be of opinion that the plaintiff was entitled to recover, they assessed the damages at a gross sum, and for that sum the court had given judgment. The judgment, therefore, as to the damages, was *entire*, and there must be a *total reversal*, with directions to the Supreme Court to award a *venire de novo*, so that the jury on the second trial might be instructed not to allow for the master's wages in the verdict that they should pronounce.

It was thereupon allowed that the judgment of the Supreme Court must be reversed in *toto* with costs; whereupon a decree was entered to that effect *by consent of parties*, the following addition being made thereto. " That a *venire de novo* be awarded by the Supreme Court, unless the defendant in error remit $140 (amount of the master's wages)

with interest, &c., and if he do so, that the Supreme Court give judgment for the residue of the damages included in the verdict, with costs in the Supreme Court."